

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00185-CV

**IN THE INTEREST OF M.R.O.** and M.E.O.

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-PA-03175
Honorable Richard Garcia, Judge Presiding

Opinion by:   Catherine Stone, Chief Justice

Sitting:   Catherine Stone, Chief Justice
Karen Angelini, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  September 25, 2013

AFFIRMED

S.J.O. appeals the order terminating her parental rights to her son, M.R.O., and her

daughter, M.E.O.  The sole issue raised on appeal is a challenge to the sufficiency of the evidence

to support the trial court's finding that termination of S.J.O.'s parental rights was in the best interest

of the children.  We affirm the trial court's order.

### BACKGROUND

In December of 2011, M.R.O. and M.E.O. were removed from S.J.O.'s home after M.E.O.

reported sexual abuse by M.R.O., her half-brother, and also by S.J.O.'s boyfriend.[1]  At the time of

the removal, M.E.O. was seven, and M.R.O. was fifteen.  S.J.O. did not believe M.E.O.'s outcry

---

[1] The testimony is conflicting as to whether S.J.O. and her boyfriend were married; however, we will refer to him as her boyfriend in this opinion.

against her boyfriend until a year later; however, S.J.O. had observed the sexual abuse by M.R.O. M.R.O. later reported to one caseworker that S.J.O.'s boyfriend also had sexually abused him. After S.J.O. completed her service plan, M.E.O. was returned to her home on November 16, 2012. M.E.O. was removed from S.J.O.'s home for a second time in December of 2012, when the Department discovered that S.J.O.'s boyfriend continued to reside in the home. S.J.O.'s rights to M.E.O. and M.R.O. were subsequently terminated after a two-day bench trial.

## STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2012); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable burden of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2008); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008).

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, the court must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*.

In reviewing the factual sufficiency of the evidence to support the termination of parental rights, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

## PREDICATE FINDINGS

S.J.O. does not challenge the sufficiency of the evidence to support the predicate findings, which included findings that S.J.O. had: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children.

## BEST INTEREST FINDING

In reviewing the sufficiency of the evidence to support the best interest finding, we apply the factors set out in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desire of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the plans held by the individual seeking custody for the child; (6) the stability of the home of the parent; (7) the acts or omissions of the parent which may indicate

that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

Based on the conflicting evidence, the trial court could have found that S.J.O. allowed her boyfriend to continue to live in her home even after M.E.O. returned to the home in November of 2012.[2] Although S.J.O. completed her service plan, she told her counselor that her boyfriend was not living in the home. The counselor stated that she would have extended the therapy and continued to work with S.J.O. on focusing on the best interest of her children if she had known S.J.O.'s boyfriend continued to reside in the home. During the counseling sessions, the counselor stressed to S.J.O. the need for her to protect her children, and S.J.O. was instructed that she would not be reunified with her children if she continued to reside with her boyfriend. During the year S.J.O. worked on completing her service plan, she did not believe M.E.O.'s outcry against her boyfriend. Instead, S.J.O. attempted to place complete blame for the abuse on her son, M.R.O. One caseworker testified that S.J.O. was willing to sacrifice M.R.O. for M.E.O. S.J.O. did not have a specific plan to protect M.E.O. from M.R.O. if both children were returned to her care.

When a caseworker asked S.J.O. about her boyfriend continuing to reside at the home after M.E.O. was returned to her care, S.J.O. stated it was "okay" because M.E.O. had a lock on her door. S.J.O. later admitted, however, that the locked door could be opened with a butter knife.

---

[2] S.J.O. continually changed her testimony regarding the extent to which her boyfriend continued to live in her home. S.J.O.'s landlord testified that S.J.O.'s boyfriend continued to live in the home. After her second removal, M.E.O. told a caseworker that S.J.O.'s boyfriend continued to live at the home and that he would hide when the caseworker visited. M.E.O. also told the caseworker that S.J.O. instructed her not to tell anybody that her boyfriend was living with them.

M.E.O.'s counselor stressed the damage that M.E.O. would experience in returning to a home where S.J.O.'s boyfriend was residing. M.E.O.'s counselor stated that such a situation would make M.E.O. less likely to disclose future abuse and to believe she was the one being punished for what occurred since she was the one removed from the home. After M.E.O. was removed from the home the second time, she told a caseworker that she had not felt safe in the home. M.R.O. also mentioned to a caseworker that he did not feel safe around S.J.O.'s boyfriend.

Based on the foregoing facts, the trial court could have formed a firm belief or conviction that S.J.O. was incapable of protecting her children from physical and emotional danger or of giving first priority to their needs and safety. Although the children love their mother and are bonded with her, the trial court could have determined that S.J.O. failed to demonstrate an ability to protect her children, and it was in the children's best interest that S.J.O.'s parental rights be terminated.

## CONCLUSION

The order of the trial court is affirmed.

Catherine Stone, Chief Justice